PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>E. GLUCK CORPORATION, a New York corporation d/b/a WWW.ARMITRON.COM,<br><br>Defendant. | Case No.  3:23-cv-2286<br><br>**CLASS ACTION COMPLAINT**<br><br>(Related to Case No 4:23-cv-00562-HSG) |

**INTRODUCTION**

**Defendant (1) secretly wiretaps the private conversations of everyone who communicates through the chat feature at www.armitron.com (the "Website"); and (2) allows at least one third party to eavesdrop on such communications in real time and during transmission to harvest data for financial gain.**

**Defendant does not obtain visitors' consent to either the wiretapping or the eavesdropping. As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA") in numerous ways.**

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states. Indeed, based upon the information available to Plaintiff, there are believed to be at least 5,000 class members, each entitled to $5,000 in statutory damages, thus making the amount in controversy at least $25,000,0000 exclusive of interests and costs.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the class claims occurred in this District and because many Class members reside in this District.

3. Defendant is subject to jurisdiction under California's "long-arm" personal jurisdiction statute because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States." Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its national sales to Californians and that the website operates as a "gateway" for many such sales, such that the website "is the equivalent of a physical store in California." Since this case involves illegal conduct emanating from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the

Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

## PARTIES

4. Plaintiff is a resident and citizen of California.

5. Defendant is a watch manufacturer headquartered in Little Neck, New York. It manufactures watches under two flagship proprietary brands, Armitron and Torgoen, as well as for major fashion brands, including Anne Klein, Nine West, Juicy Couture, Vince Camuto, Badgley Mischka and Joseph Abboud. It sells its products throughout the United States and in this Judicial District.

## FACTUAL ALLEGATIONS

6. CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. Compliance with CIPA is easy, and most website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.[1]

7. Unlike most companies, Defendant *ignores* CIPA. Instead, Defendant enables and allows a third party "spyware" company to intercept and eavesdrop on all such conversations. Why? Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight to make informed business decisions. . .**When people are chatting, you have direct access to their exact pain points.***"). See https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited May 2023) (emphasis added).

8. Defendant's actions are not incidental to the act of facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, as noted

---

[1] https://www.leechtishman.com/insights/blog/the-california-invasion-of-privacy-act-californias-wiretap-act/ ("*CIPA Compliance is not difficult. A business must take certain steps. . .with a chat feature. . .to ensure that it obtains valid consent consistent with the holdings of courts interpreting CIPA.*") (last visited May 2023) (emphasis added).

above, Defendant's actions are contrary to industry norms and the legitimate expectations of consumers.

9. To enable the eavesdropping, Defendant has covertly embedded code into its chat feature that enables and allows a third party spyware company – "Chatra" – to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors – even though all such conversations and the accompany metadata contain PII. Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.

10. One might reasonably wonder why an independent third-party spyware company would be interested in intercepting and recording the website chat interactions between Defendant and unsuspecting visitors to Defendant's website. As shown below, it all about money.

11. Chatra's software is integrated with Meta subsidiaries like Facebook. ***Indeed, Chatra freely admits that it transfers personal chat data to various companies, including Facebook, for "prospecting and retargeting."*** *See* https://chatra.com/privacy-policy/ (last accessed May 2023).

12. Why does Meta want private chat transcripts between Defendant and unsuspecting customers? According to Bloomerg.com, its because Meta has a "plan to profit from private chats." *See* https://www.bloomberg.com/news/articles/2022-02-15/meta-closes-1-billion-kustomer-deal-after-regulatory-review (last downloaded May 2023).

13. The scheme works like this: **First**, Defendant allows Chatra to secretly intercept, store, harvest, and exploit its chat transcripts with customers. **Second**, Chatra provides the chat transcripts to Meta (and others) through integration. **Third**, Meta identifies user interests by harvesting the chat data provided by Chatra. **Fourth,** Meta's subsidiaries like Facebook and WhatsApp sell advertising space to companies that wish to take advantage of "targeted advertising" opportunities created by harvesting data from the chat transcripts. **Fifth and finally**, the unsuspecting chat user is bombarded

with targeted advertising.

14. To summarize: (1) Defendant enables Chatra to intercept, record, and eavesdrop upon private chat conversations with customers; (2) Chatra harvests valuable data from those chat transcripts and shares it with Meta; (3) Meta sells advertising to companies based upon the data from the chat transcripts; and (4) the unsuspecting customer is then bombarded with targeted advertising based upon the customer's private chats with Defendant.

15. In other words, Chatra's manipulation, monetization, use of, and exploitation of the data it is able to gather through the chat feature in real time makes it more than a mere "extension" of Defendant.

16. Given the nature of Defendant's business, visitors may share sensitive personal data and always share PII with Defendant via the Website chat feature. Visitors would be shocked and appalled to know that Defendant secretly records those conversations and allows a third party to eavesdrop on them in real time under the guise of "data analytics."

17. Within the past year, Plaintiff visited Defendant's Website. Plaintiff used a smart phone (a cellular telephone with integrated computers to enable web browsing). As such, Plaintiff's conversations with Defendant were transmitted from "cellular radio telephones" and/or "landline telephones" as defined by CIPA.

18. By definition, Defendant's chat communications from its website are transmitted to website visitors by either cellular telephony or landline telephony. *See* https://www.britannica.com/technology/Internet ("How does the Internet work?") ("*The Internet works through a series of networks that connect devices around the world through telephone lines.*") (last visited May 2023).

19. Defendant did not inform Class members that Defendant was secretly allowing, aiding, and abetting a third party to intercept and eavesdrop on the conversations in real time, and then exploit that data, share it with third parties, and use it for its own gain.

20. Defendant did not obtain Plaintiff's or the Class members' express or implied consent to allow Chatra to eavesdrop on visitor conversations, nor did Plaintiff or Class members know at the time of the conversations that Defendant was secretly allowing third parties to eavesdrop on them.

## **CLASS ALLEGATIONS**

21. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons within the state of California who (1) communicated with Defendant via the chat feature on Defendant's Website; and (2) whose communications were recorded and/or eavesdropped upon without prior consent.**

22. NUMEROSITY: Plaintiff does not know the number of Class members but believes the number to be in the thousands, if not more. The exact identities of Class members may be ascertained by the records maintained by Defendant.

23. COMMONALITY: Common questions of fact and law exist as to all Class members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class member, include but are not limited to the following:

   a. Whether Defendant aided and abetted a third party in eavesdropping on such communications;

   b. Whether Plaintiff and Class members are entitled to statutory penalties; and

   c. Whether Class members are entitled to injunctive relief.

24. TYPICALITY: As a person who visited Defendant's Website and whose electronic communication was recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class.

25. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

26. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## FIRST CAUSE OF ACTION

## Violations of the California Invasion of Privacy Act

## Cal. Penal Code § 631

27. Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section".

28. Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' Cal. Penal Code § 631(a)." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022).

29. The software embedded on Defendant's Website to eavesdrop upon the Class's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

30. At all relevant times, Defendant intentionally enabled, aided, and abetted Customer to eavesdrop upon class member's conversations.

31. Plaintiff and Class members did not expressly or impliedly consent to any of Defendant's actions.

32. Defendant's conduct violates Cal. Penal Code § 631(a), entitling Plaintiff and Class members to injunctive relief and statutory damages.

## SECOND CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 632.7

33. Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone."

34. Plaintiff and the class members communicated with Defendant using telephony subject to the mandates and prohibitions of Section 632.7.

35. Defendant's communication from the chat feature on its website is transmitted via telephony subject to the mandates and prohibitions of Section 632.7.

36. As set forth above, Defendant recorded telephony communication without the consent of all parties to the communication in violation of Section 632.7.

37. As set forth above, Defendant also aided and abetted a third party in the interception, reception, and/or intentional recordation of telephony communication in violation of Section 632.7.

38. Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 632.7, entitling Plaintiff and Class members to injunctive relief and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;
2. An order declaring Defendant's conduct violates CIPA;
3. An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;
4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;
5. Statutory damages pursuant to CIPA;
6. Reasonable attorneys' fees and costs; and
7. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

///
///
///
///
///

8. Reasonable attorneys' fees and costs; and

9. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated: May 10, 2023

PACIFIC TRIAL ATTORNEYS, APC

By: *[signature]*
Scott. J. Ferrell
Attorneys for Plaintiff